DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant/Cross-Appellee Gisele Ponder appeals from a judgment entered in the Summit County Court of Common Pleas pursuant to a jury verdict in favor of Appellee Dr. Robert Kamienski. In addition, Cross-Appellant Dr. Michael Oddi appeals from that same judgment which denied his motion for sanctions. This Court affirms in part and reverses in part.
 I. {¶ 2} Eddie Ponder ("Decedent") had his first heart attack in 1994 and underwent a three vessel bypass surgery performed by Appellee later that year. In *Page 2 
February 2002, Decedent developed chest pain. After consulting his primary care physician (who is not involved in this litigation), Decedent underwent a second coronary bypass performed by Appellee on February 26, 2002. Due to the formation of scar tissue on the heart from the first surgery, both parties agree that this bypass posed significantly more risk than the initial procedure. Upon opening Decedent's chest cavity, Appellee discovered that Decedent's heard had attached itself to the sternum by this scar tissue. Doctors unsuccessfully attempted to disengage the organ, and Decedent died during the operation from blood loss.
 {¶ 3} Appellant, administratrix of Decedent's estate, filed this medical malpractice action against Appellee, seeking damages. Appellant alleged that Appellee's level of care repeatedly fell below the acceptable standard of care before and during the surgery. During the jury trial, both sides produced expert witnesses who disagreed on the applicable standard of care for such an operation and whether Appellee met that standard. On April 7, 2006, the jury returned a verdict in favor of Appellee. Appellant filed a motion for a new trial, which the trial court denied. Appellant has timely appealed, asserting seven assignments of error. For ease of analysis, we discuss the assignments out of order.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY PERMITTING JURY INSTRUCTIONS IN THIS CASE REGARDING CLINICAL JUDGMENT. SUCH AN INSTRUCTION IMPLIES A *Page 3 
SUBJECTIVE STANDARD OF CARE AND IS REVERSIBLE ERROR."
 {¶ 4} In her first assignment of error, Appellant argues that the trial court erred in instructing the jury that a physician cannot be found liable for an error in clinical judgment. Appellant avers that the trial court incorrectly instructed the jury to apply a subjective standard of care rather than an objective one and that opposing counsel's remarks during closing argument further confused the jury as to the applicable standard. This Court disagrees.
 {¶ 5} The specific language of a jury instruction is within the discretion of the trial court. Toth v. Oberlin Clinic, Inc., 9th Dist. No. 01CA007891, 2002-Ohio-2211, at ¶ 44. When reviewing jury instructions:
 "an appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." (Citations omitted.) Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410.
 {¶ 6} The proper standard of care in a medical malpractice case was set forth by the Ohio Supreme Court in Bruni v. Tatsumi (1976),46 Ohio St.2d 127. The Court stated:
 "Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar *Page 4 
conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things." Bruni, 46 Ohio St.2d at 131.
The above standard is "generally considered to be objective, rather than subjective, applying equally to all physicians under like or similar conditions or circumstances." Toth at ¶ 47, citing Riley v. NortheastFamily Health Care (Apr. 9, 1997), 9th Dist. No. 17814, at *5-6.
 {¶ 7} Appellant takes issue with the following portion of the jury instructions:
 "Members of the medical profession cannot be held responsible for circumstances beyond their knowledge and ability to anticipate and prevent. A physician may not be found liable for mere error in clinical judgment. It must also be proven that the error was due to the physician's failure to exercise the required degree of care and skill."
Appellant argues that this portion of the instructions prejudicially distorted the applicable objective standard of care into a subjective standard.
 {¶ 8} This Court has previously held that "in the context of a jury charge which comports with the Bruni standard, [the Court does] not find that a reference to `judgment' necessarily so distorts the instruction as a whole that it does not clearly and fairly express the applicable law." Riley at *6.
 {¶ 9} In the present action, Appellant does not argue that the trial court failed to give the proper Bruni charge, and a review of the record reveals that the *Page 5 
trial court gave a clear instruction on the proper Bruni standard of care. Taking the instruction as a whole, this Court concludes that the instruction clearly and accurately states the applicable law.
 {¶ 10} Appellant relies on Kurzner v. Sanders (1993),89 Ohio App.3d 674, as authority that an instruction on a doctor's use of "judgment" constitutes reversible error. In that case, the First District Court of Appeals found that a jury charge that contained language similar to that in the present action improperly altered the standard of care. Id. at 680. However, the Kurzner decision failed to discuss the rest of the charge, so we cannot know whether it contained the proper Bruni
standard. Accordingly, Kurzner provides no basis for deviating from our general rule that reversal is not warranted when an instruction includes the Bruni charge. See Riley at *6; Toth at ¶ 49.
 {¶ 11} Having found the jury instruction proper, it follows that the remarks made by Appellee's counsel during closing arguments could not act "in concert" with the instructions to prejudicially affect a substantial right of the complaining party. See Wozniak,90 Ohio App.3d at 410. Appellant's first assignment of error is without merit.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY PERMITTING THE APPELLEES TO PLAY A DVD OF A RE-DO HEART SURGERY BY DR. NOVOA DURING HIS DIRECT EXAMINATION. THIS ERROR PREJUDICED THE APPELLANT." *Page 6 
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED BY PERMITTING REPUTATION AND OPINION EVIDENCE ON THE SURGICAL AND PROFESSIONAL ABILITY OF DR. KAMIENSKI DURING TRIAL. THIS ERROR RESULTED IN PREJUDICE TO THE APPELLANT."
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED IN PERMITTING THE USE OF HEARSAY IN CROSS EXAMINATION OF DR. WELLS WAS REVERSIBLE ERROR." (Sic.)
 ASSIGNMENT OF ERROR VI "THE TRIAL COURT ERRED BY ALLOWING APPELLEES' COUNSEL TO IMPUGN THE REPUTATION OF APPELLANT'S COUNSEL IN TRIAL."
 {¶ 12} As Appellant's second, fourth, fifth, and sixth assignments of error are interrelated, this Court addresses them together. Appellant asserts that the trial court erred in permitting evidence, testimony, and argument that unfairly prejudiced her. Because Appellant did not contemporaneously object at trial and waived appellate review of the issues, this Court disagrees.
 {¶ 13} The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121; see also Gallagher v. Cleveland Browns Football Co. (1996),74 Ohio St.3d 427, 436-437; Buchman v. Wayne Trace Local School Dist. Bd. of Edn.
(1995), 73 Ohio St.3d 260, 271. An issue otherwise waived because of a failure to object may be brought up on appeal *Page 7 
only through the doctrine of plain error. Goldfuss,79 Ohio St.3d at 121. Furthermore, "a motion in limine does not preserve the record on appeal[;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection * * * when the issue is actually reached during the trial." (Emphasis omitted.) State v. Grubb (1986), 28 Ohio St.3d 199, 203, citingState v. White (1982), 6 Ohio App.3d 1.
The Playing of the DVD
 {¶ 14} Appellant made a motion in limine to exclude a DVD, which showed one of Appellee's experts performing a re-do heart surgery. However, Appellant did not object to the DVD at trial. The record reflects that Appellant moved to exclude the DVD during the lunch break on April 6th. The trial court admitted the DVD, which was to be shown during the afternoon session. The court ruled on the motion before the lunch break ended. Appellant did not object directly before or during the showing of the DVD. Accordingly, Appellant's appeal must rely on plain error. See Goldfuss, 79 Ohio St.3d at 121. Because Appellant fails to argue plain error in her brief, this Court does not undertake such a review. Appellant's second assignment of error is without merit.
Admission of Opinion Evidence Regarding Dr. Kamienski's SurgicalAbility {¶ 15} Appellant cites four specific instances where the trial court allegedly erroneously allowed opinion evidence into testimony. Appellant filed a motion in limine to exclude all such opinion evidence at the beginning of the trial. The court *Page 8 
ruled that limited reputation testimony would be allowed. However, Appellant failed to later object to any of the testimony. As the motion in limine does not preserve the issue on appeal without such an objection, Appellant has waived all but plain error. Grubb,28 Ohio St.3d at 203; Goldfuss, 79 Ohio St.3d at 121. Since Appellant does not argue plain error, we do not address it. Appellant's fourth assignment of error is without merit.
Use of Hearsay and the Impugnation of Appellant's Counsel {¶ 16} In Appellant's fifth and sixth assignments of error, she asserts that the trial court improperly allowed inadmissible hearsay testimony that impugned her counsel. However, Appellant failed to object to any of the testimony she cites. Therefore, it is only preserved for review by arguing the doctrine of plain error. Grubb,28 Ohio St.3d at 203; Goldfuss, 79 Ohio St.3d at 121. Appellant fails to argue plain error, and thus we do not perform such a review. Appellant's fifth and sixth assignments of error are without merit.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED BY PERMITTING TESTIMONY AND ARGUMENT DURING THE TRIAL THAT EDDIE PONDER'S DEATH WAS DUE TO GOD'S WILL OR AN ACT OF GOD. THIS ERROR PREJUDICED THE APPELLANT AND A NEW TRIAL SHOULD BE ORDERED. FURTHER THIS TESTIMONY WAS IN VIOLATION OF THE PLAIN ERROR RULE" *Page 9 
 {¶ 17} In her third assignment of error, Appellant contends that two references to God and Decedent's life being in God's hands deprived her of "substantial justice" and as a result a new trial is necessary. This Court disagrees.
 {¶ 18} As noted above, Ohio law holds "that that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal."Goldfuss, 79 Ohio St.3d at 116. However, an issue otherwise waived may be brought up on appeal through the plain error doctrine. Id. at 121.
 "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Id.
Since Appellant failed to object to the challenged testimony during trial, she now argues plain error.
 {¶ 19} Appellant cites two instances where God or an act of God was mentioned during trial. The first was during the testimony of Dr. Terry Gordon. Gordon testified that after the second bypass he related a touching movie scene to both Appellee and the Decedent's family. The scene involved a surgeon receiving spiritual insight that God was in control after an operation in which a patient was lost. *Page 10 
 {¶ 20} The second reference to God was during Appellee's closing argument, where counsel stated:
 "And I will leave with you the thought that sometimes it is not in the physician's hands, sometimes it is in God's hands, and there is nothing that the physician can do. I respectfully submit to you that this is such a case."
 {¶ 21} Appellant seems to argue that Appellee was trying to advance a theory that God was the proximate cause of Decedent's death and that this absolves Appellee of liability regardless of any possible negligence. However, a review of the transcript makes it clear that both Appellee's counsel and Dr. Gordon meant that because Appellee was not negligent, Decedent's passing was not a result of any negligence, and therefore natural or "an act of God." Furthermore, these two isolated statements, made over eight days of a trial and over 1,500 pages of transcript, do not amount to plain error.
 {¶ 22} To support her argument, Appellant cites out of state case law involving jury instructions mentioning God's will. In the case at bar, the references to God are contained in argument and testimony, not instructions from the Court. It cannot reasonably be said that references to God in the present action improperly swayed the jury, and as such they fall far short of plain error. Appellant's third assignment of error is without merit. *Page 11 
 ASSIGNMENT OF ERROR VII "THE TRIAL COURT ERRED BY NOT ALLOWING APPELLANT'S COUNSEL TO TAKE THE STAND IN REBUTTAL OF STATEMENTS MADE BY DR. KAMIENSKI REGARDING AN ALLEGED MEETING BETWEEN DR. KIP WELLS AND PAUL PERANTINIDES."
 {¶ 23} In her last assignment of error, Appellant contends that the trial court abused its discretion in not allowing Appellant's counsel, attorney Paul Perantinides, to take the stand and offer rebuttal testimony as to an alleged meeting between Perantinides and one of Appellant's expert witnesses, Dr. Wells. This Court disagrees.
 {¶ 24} The admission of evidence is within the sound discretion of the trial court. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604. A trial court's decision on whether to allow rebuttal evidence will not be reversed absent an abuse of discretion. State v. McNeill (1998),83 Ohio St.3d 438, 446. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 25} In Ohio, an attorney representing a litigant in a pending case may testify in that case. Mentor Lagoons, Inc., v. Rubin (1987),31 Ohio St.3d 256, paragraph one of the syllabus. When an attorney requests permission or is called to testify in an ongoing case, the court shall determine the admissibility of the *Page 12 
attorney's testimony in accordance with its discretion in allowing rebuttal evidence. Id. at 260.
 {¶ 26} The pretrial meeting between Perantinides and Wells came up during trial on two separate occasions. The first was during Wells' cross-examination. Wells testified that he met with Perantinides during the summer of 2002 because Wells received a 180-day letter naming him as a defendant in the present action. Perantinides then discussed the meeting with Wells on re-direct.
 {¶ 27} The meeting was later referenced in the direct examination of Dr. Kamienski. Kamienski testified that Wells was dismissed from Kamienski's surgical group in April of 2002. When presented with his dismissal letter, Wells threatened that he was going to "ruin" Kamienski and had already talked to Perantinides. After direct examination, Perantinides requested a sidebar and argued that Kamienski only heard about the meeting from Wells' earlier testimony and subsequently fabricated the story of Wells yelling at the meeting. Perantinides believed Kamienski's testimony implicated him in Wells' alleged revenge plot and his name could only be cleared through testifying himself. The trial court initially ruled that it would allow Perantinides to take the stand; however, it later determined that such testimony posed too great a risk of causing a mistrial.
 {¶ 28} A review of the record reveals that Appellant had several opportunities to elucidate what took place at the meeting without Perantinides taking the stand, most notably during the re-direct of Wells. Wells also could have *Page 13 
been called as a rebuttal witness after Kamienski's testimony. Furthermore, it is unclear how the specific topics of a discussion between Peratinides and Wells relate to Appellee's possible negligence. The testimony of Appellant's counsel was unnecessary, and its disallowance was well within the trial court's discretion.
 {¶ 29} Appellant cites Mentor Lagoons, 31 Ohio St. 256, andCoulson v. Goodyear Tire Rubber Co., (June 21, 2000), 9th Dist. No. 19485, to support her contention that the disallowance of Perantinides' rebuttal testimony constitutes reversible error. These cases are not helpful to her argument. Mentor Lagoons holds that while an attorneymay testify in a client's ongoing case under DR 5-102(A), that testimony must be otherwise admissible. Mentor Lagoons, 31 Ohio St. 259.Coulson specifically holds that under DR 5-102(A) the "threshold consideration is whether counsel `ought to be called as a witness on behalf of his client.'" Coulson at *4, quoting DR 5-102(A). While it is true that disallowance of an attorney's testimony can constitute reversible error, the trial court in the case at bar found that Perantinides' testimony did not pass the threshold issue of admissibility. Because we found previously that this was not an abuse of discretion, Perantinides' rebuttal testimony was properly disallowed. Appellant's seventh assignment of error is without merit.
CROSS-ASSIGNMENT OF ERROR I
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING DR.ODDI'S MOTION FOR SANCTIONS PURSUANT TO R.C. 2323.51." *Page 14 
 CROSS-ASSIGNMENT OF ERROR II "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DR. ODDI'S MOTION FOR SANCTIONS PURSUANT TO CIV.R. 11."
 {¶ 30} In both of his cross-assignments of error, Dr. Oddi asserts that the trial court erred in denying his motion for sanctions. As his cross-assignments of error are interrelated, we address them together.
 {¶ 31} A decision to impose sanctions pursuant to Civ.R. 11 is within the sound discretion of the trial court. State ex rel. Fant v.Sykes (1987), 29 Ohio St.3d 65, 65. "Appellate review of a trial court's award of attorney's fees for frivolous conduct pursuant to R.C. 2323.51
is * * * under the abuse of discretion standard, but the trial court's factual findings supporting a conclusion that frivolous conduct occurred will not be overturned if they are supported by competent, credible evidence." SS Computer Sys., Inc. v. Peng, 9th Dist. No. 20889, 2002-Ohio-2905, at ¶ 9. An abuse of discretion connotes more than an error of law or judgment. Blakemore, 5 Ohio St.3d at 219. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Id. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 32} Under R.C. 2323.51(A)(2)(a), damages for frivolous conduct may be awarded under the following conditions:
 "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper *Page 15 
purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 "(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
 "(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
 "(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."
Further, under Civ.R. 11, costs and attorney's fees may be awarded to a party under the following conditions:
 "The signature of an attorney * * * constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * For a willful violation of this rule, an attorney * * *, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule."
R.C. 2323.51 {¶ 33} With respect to sanctions under R.C. 2323.51, the Ohio Supreme Court has noted as follows:
 "When a trial court has determined that reasonable inquiry by a party's counsel of record should reveal the inadequacy of a claim, a finding that the counsel of record has engaged in frivolous conduct is justified, as is an award, made within the statutory guidelines, to any party adversely affected by the frivolous conduct." Ron Scheiderer Assoc. v. London
(1998), 81 Ohio St.3d 94, 97-98. *Page 16 
 {¶ 34} In the instant matter, Appellant never obtained expert testimony that supported a malpractice claim against Dr. Oddi. Appellant retained three experts prior to trial, the last of which was deposed by Appellee on April 5, 2005. None of these experts opined that Dr. Oddi had failed to meet the standard of care. Despite a lack of the required evidence to go forward, Appellant took no action to dismiss the case against Dr. Oddi. Instead, Appellant required Dr. Oddi to file a motion for summary judgment on the claim against him and then did not oppose such a motion.
 {¶ 35} At no point during the trial court proceedings did Appellant obtain any evidence to support a claim of medical malpractice against Dr. Oddi. Appellant, however, took no action to remove Dr. Oddi from the litigation. This refusal to act only served to extend the time during which a lawsuit remained pending against Dr. Oddi. Moreover, Appellant's failure to act caused Dr. Oddi to endure the expense of filing an unopposed motion for summary judgment. Accordingly, we find that the trial court abused its discretion in failing to award Dr. Oddi sanctions for Appellant's frivolous conduct. Dr. Oddi's first cross-assignment of error is sustained.
Civil Rule 11 {¶ 36} When presented with a motion for sanctions pursuant to Civ.R. 11, a trial court "must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her *Page 17 
knowledge, information, and belief, and (3) did not file it for purposes of delay." Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286, 290. If any one of these requirements is not satisfied, the trial court must then determine whether "the violation was `willful' as opposed to merely negligent." Id. "A willful violation involves a party who has willfully signed a pleading which, to the best of his knowledge, information and belief, was not supported by good ground." Nationsrent v. MichaelConstr. Co. (Mar. 27, 2002), 9th Dist. No. 20755, at *2, citingHaubeil Sons Asphalt Materials, Inc. v. Brewer Brewer Sons,Inc. (1989), 57 Ohio App.3d 22, 23. If the trial court finds that the violation was willful, it may impose an appropriate sanction.Ceol, 81 Ohio App.3d at 290.
 {¶ 37} Although he does not specify the pleading for which he seeks sanctions, it appears that Dr. Oddi's motion seeks sanctions for the filing of the complaint against him. Specifically, Dr. Oddi argues that Appellant lacked good grounds to support filing a medical malpractice case against him. Upon review, we cannot say that the trial court abused its discretion in determining that Dr. Oddi had not met his burden in seeking sanctions under Civ.R. 11.
 {¶ 38} At the time of the filing of the complaint, Appellant knew that Dr. Oddi was listed as the first assistant surgeon for Decedent's surgery. Given the highly technical arguments Appellant made regarding the alleged malpractice, we cannot say that Appellant lacked reasonable grounds for filing suit against Dr. Oddi. Moreover, even if we were to assume that it was improper to name Dr. *Page 18 
Oddi, Appellant did not demonstrate that the filing of the complaint was a willful violation of Civ.R. 11. While this Court may not agree with Appellant's choice to file suit without first obtaining a preliminary expert's report, we cannot say the trial court abused its discretion in determining that Appellant's counsel did not willfully violate Civ.R. 11. Accordingly, Dr. Oddi's second cross-assignment of error lacks merit.
 III. {¶ 39} Appellant's assignments of error are overruled. Dr. Oddi's first cross-assignment of error is sustained and his second cross-assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion. Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into *Page 19 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed equally to Gisele Ponder and Dr. Michael Oddi.
SLABY, P. J. CONCURS