FAHLBUSH, Appellee and Cross–Appellant,

v.

CRUM–JONES et al., Appellees and Cross–Appellees; Erie
Insurance Company, Appellant and Cross–Appellee.

[Cite as *Fahlbush v. Crum–Jones*, 176 Ohio App.3d 328, 2008-Ohio-1953.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–070285 and C–070308.

Decided April 25, 2008.

Droder & Miller Co., L.P.A., Bradley A. Powell, and W. John Sellins, for appellee and cross-appellant.

Freund, Freeze & Arnold and John J. Garvey III, for appellee and cross-appellee Geico General Insurance Company.

Martin & Bailey and Stephen A. Bailey, for appellant and cross-appellee.

MARK P. PAINTER, Judge.

{¶ 1} In this uninsured-motorist case, defendant-appellant/cross-appellee Erie Insurance Company ("Erie") appeals the entry of partial summary judgment in favor of plaintiff-appellee/cross-appellant, Jeffrey Fahlbush. In 2003, Fahlbush was in a car accident with defendant-appellee/cross-appellee Connie Crum–Jones, and Fahlbush sued, seeking a declaration that he was covered under an Erie insurance policy issued to Fahlbush's employer, Cincinnati Building and Contracting, Inc. ("CBCI"). Defendant-appellee/cross-appellee Geico General Insurance Company insured Fahlbush.

{¶ 2} Before the accident, Fahlbush had been at a CBCI job site, but had left when the work at that site had been stopped because a necessary inspection had been lacking. According to Fahlbush, he drove to the next job site and, while en route, was in a car accident. In its appeal, Erie contends that it did not owe coverage because Fahlbush was not en route to another CBCI job site and that even if he was, the CBCI policy did not cover him.

{¶ 3} We note that Erie failed to raise below the issue whether CBCI's policy covered Fahlbush; notwithstanding this, our review of the record convinces us

that Fahlbush was covered under the uninsured-motorist ("UM") provision of the CBCI policy and that the accident occurred while Fahlbush was acting in the scope of his employment. We must therefore affirm the trial court's entry of summary judgment for Fahlbush.

{¶ 4} Also, on the authority of *Bowman v. Progressive Cas. Ins. Co.*,[1] we summarily conclude that Fahlbush's cross-appeal—urging us to reverse the trial court's decision denying prejudgment interest against Erie and Geico—is meritless. Our review of the record reveals no abuse of discretion and no basis to depart from our previous holding that prejudgment interest should generally not be awarded when the insured's coverage exceeds his or her damages—as was the case here.

### I. A Lack of Work

{¶ 5} In February 2003, Fahlbush went to his assigned job site at Village Brook Apartments and on arrival learned that he could not work because a required inspection had not been performed.

{¶ 6} The site manager advised Fahlbush about another job where CBCI was performing work. Fahlbush attempted to call three different dispatching supervisors for further instructions, but he could reach no one. Fahlbush then decided to drive to the nearest CBCI jobsite, which was at Furrow's Lumber on Reading Road in Evendale, Ohio. CBCI required Fahlbush to use his own car to drive from job site to job site, and he was considered to be on the job while in transit and was paid for his time driving between job sites. The accident occurred at the intersection of Kemper and Snider Road, when Connie Crum–Jones failed to yield the right-of-way and turned in front of Fahlbush as he was traveling along Kemper Road.

{¶ 7} Fahlbush was injured, and his car was damaged. Fahlbush filed for workers' compensation, and the Ohio Industrial Commission ruled that Fahlbush was in the course and scope of employment when the accident occurred, thereby entitling him to compensation.

{¶ 8} Fahlbush then brought this declaratory-judgment action seeking coverage under CBCI's Erie insurance policy. Fahlbush later moved for partial summary judgment on the issues of coverage and scope of employment. Oddly, Erie's memorandum in opposition did not address the issue whether Fahlbush was covered under the terms of the policy. Consequently, the hearing and trial court's decision focused on whether Fahlbush was acting in the scope of his employment. In concluding that he was, the court noted that although there

---

1. *Bowman v. Progressive Cas. Ins. Co.* (1999), 136 Ohio App.3d 259, 265, 736 N.E.2d 502.

were factual discrepancies in the record, the discrepancies were immaterial to the issue of summary judgment.

{¶ 9} The summary-judgment standard required that Fahlbush's motion be granted if (1) there were no material issues of fact remaining, (2) Fahlbush was entitled to judgment as a matter of law, and (3) based on the evidence, reasonable minds could have come to only one conclusion, and that conclusion was adverse to Erie.[2] On appeal, we review an entry granting summary judgment de novo;[3] and though the evidence must be construed in favor of the nonmoving party,[4] we are mindful that only genuine factual disputes that affect the outcome of the suit will preclude summary judgment.[5]

## II.   Scope and Course of Employment

{¶ 10} Erie contends that summary judgment was precluded because material issues of fact existed regarding whether Fahlbush was actually going to work when the accident occurred.   Specifically, Erie cites inconsistencies in the record, including the following:  (1) Fahlbush's letter to the Bureau of Workers' Compensation ("BWC") asserted that he could not reach his dispatch supervisor, and that this was not unusual, but in Fahlbush's first deposition he stated that he had never been in a situation where he was unable to make contact with his employers, (2) Fahlbush claimed in his BWC letter that he had driven to Furrow's, the closest job site, as he had done in the past, but the facts indicated that he had never in the past gone to a new job site because it was closest, and that he had never traveled to another job site without being specifically assigned by a supervisor, and (3) the affidavits of Fahlbush and Tom Jansen (another CBCI employee) conflicted, according to Erie's brief, because Jansen claimed that "employees were given discretion to go from jobsite to jobsite without the need to call the office or owners," whereas Fahlbush's affidavit went on "at length to point out that he [had] tried calling the owners to get a new assignment."

{¶ 11} In reverse order, we first note that Jansen did not testify that employees were given discretion to travel from job site to job site without the need to call the dispatching supervisors.   Jansen's affidavit stated only that employees were given discretion to leave job sites to obtain tools, parts, or materials without the need to call the office or supervisors.   And Erie's first and

---

2.   See Civ.R. 56(C);  see also *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

3.   See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

4.   See *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129.

5.   Id.;  see also *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202;  *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 520 N.E.2d 198.

second examples of inconsistencies in the record were immaterial to the entry of summary judgment in this case. As the trial court correctly noted, "without question, there are grounds to assert [that] discrepancies may be shown in [Fahlbush's] statements. But to raise the situation to the level of being a genuine issue of fact, the credibility must relate to a material fact."

{¶ 12} The issues identified by Erie—whether Fahlbush had been able to reach his supervisors and whether he had traveled to another job site without being specifically assigned by a supervisor—were immaterial to whether he was in the course and scope of his employment when the accident occurred. He clearly was.

### III.  A Waived Argument

{¶ 13} The issue whether Fahlbush was covered under the UM endorsement of CBCI's policy as an "active member" of CBCI was apparent at trial. But because it was not raised by Erie in the trial court, it has been waived on appeal.

{¶ 14} Under the waiver doctrine, the failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal.[6] The rule ensures that the trial court is afforded an opportunity to avoid or correct an error by placing the adversary on notice of the argument and providing an opportunity for rebuttal, and by providing the trial court with an opportunity to modify its decision or to order a more complete development of the record regarding the issue for review.[7] Thus, a reversible error is one that has been *first suggested as error to the trial court.*[8]

{¶ 15} Erie failed to raise the issue whether the policy covered Fahlbush at trial. Fahlbush had no notice of the argument, and the trial court was never given the opportunity to develop the record regarding that issue. For these reasons, Erie's argument that Fahlbush was not covered under the UM endorsement has effectively been waived and is barred on appeal.

{¶ 16} Even so, it appears that Fahlbush was covered under the UM endorsement. Insurance policies are contracts.[9] When a term is not defined in an insurance policy, as in any contract, the ordinary meaning will prevail.[10] The

---

6.  See *Ponder v. Kamienski,* 9th Dist. No. 23270, 2007–Ohio–5035, 2007 WL 2781197, at ¶ 13.

7.  See *Pfeifer v. Jones & Laughlin Steel Corp.* (C.A.3, 1982), 678 F.2d 453, fn. 1; *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 489 N.E.2d 277.

8.  (Emphasis added.)  *Thamann v. Bartish,* 167 Ohio App.3d 620, 2006–Ohio–3346, 856 N.E.2d 301, ¶ 58 (Gorman, J., dissenting), citing *Pfeifer.*

9.  *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003–Ohio–5849, 797 N.E.2d 1256.

10.  *Byers v. Motorists Ins. Cos.,* 169 Ohio App.3d 404, 2006–Ohio–5983, 863 N.E.2d 196.

failure to define a term in an insurance policy does not automatically render the policy ambiguous.[11]   Rather, only when no ordinary meaning of the term exists will the failure to define the term constitute an ambiguity.[12]   In cases of ambiguities, policy terms will be construed in favor of coverage.[13]

{¶ 17} The Erie UM endorsement stated that insureds were "active members of the organization."  "Active members" was not defined in the policy.  The Second Appellate District, in *Florence v. Brown,* held that an employee was not an active member under the policy, but failed to state its reasoning or to define the term.[14]

{¶ 18} Because an ordinary meaning of the term existed, the policy's failure to provide a definition did not create an ambiguity.  Instead, the ordinary meaning prevailed.  Literally defined, a "member" is "one of the individuals composing a group."[15]   Likewise, "active" is defined as "marked by present operation" or "engaged in an action or activity."[16]   In that sense, Fahlbush was an active member of CBCI. Although Erie has waived the argument, we are convinced that, under the policy, Fahlbush would have been considered an active member. Perhaps the drafters meant something else, but we cannot discern exactly what. We affirm the judgment of the trial court.

Judgment affirmed.

HILDEBRANDT, P.J., and HENDON, J., concur.

---

11.  *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 652 N.E.2d 684.

12.  *Boso v. Erie Ins. Co./Erie Ins. Exchange* (1995), 107 Ohio App.3d 481, 669 N.E.2d 47.

13.  *Spike Indus. v. Midwestern Indemn. Co.,* 7th Dist. No. 06–MA–148, 2007–Ohio–6225, 2007 WL 4145842, at ¶ 11, citing *Galatis,* supra, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 14, and *Yeager v. Pacific Mut. Life Ins. Co.* (1956), 166 Ohio St. 71, 1 O.O.2d 204, 139 N.E.2d 48.

14.  *Florence v. Brown,* 2d Dist. No. 19847, 2004–Ohio–772, 2004 WL 315219, at ¶ 28.

15.  Merriam Webster's Online Dictionary (2008).

16.  Id.